UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DARLENE ACOSTA,<br><br>                    Plaintiff,<br><br>     v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of the Social Security Administration,[1]<br><br>                    Defendant. | Case No. C16-787-TSZ<br><br>**ORDER AFFIRMING THE COMMISSIONER'S FINAL DECISION** |

Darlene Acosta seeks review of the denial of her application for Supplemental Security Income and Disability Insurance Benefits.  Ms. Acosta contends the ALJ erred in "(1) failing to develop the record given the lack of any functional assessments completed by treating or examining sources and (2) finding that [Mr. Acosta's] … allegations were not fully credible." Dkt. 12 at 1.  Ms. Acosta argues that these errors impacted the residual functional capacity (RFC) determination and the ALJ's findings at step four and five of the sequential evaluation process.  *Id.*  Ms. Acosta contends this case should be remanded for further administrative proceedings.  Dkt. 12 at 2, 17.  As discussed below, the Court **AFFIRMS** the Commissioner's final decision and **DISMISSES** the case with prejudice.

---

[1] Nancy A. Berryhill is now the Acting Commissioner of the Social Security Administration.  Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted for Carolyn W. Colvin as defendant in this suit.  The Clerk is directed to update the docket, and all future filings by the parties should reflect this change.

ORDER AFFIRMING THE
COMMISSIONER'S FINAL DECISION - 1

# BACKGROUND

On July 29, 2011, Ms. Acosta applied for benefits, alleging disability as of December 24, 2009. Tr. 703, 199-206. Ms. Acosta's applications were denied initially and on reconsideration and, after a hearing, the Administrative Law Judge [ALJ] issued an unfavorable decision on December 12, 2012. Tr. 19-30, 703. The Appeals Council denied review. Tr. 1-4, 703. By order dated October 16, 2014, the district court vacated and remanded the case directing the ALJ to reevaluate the opinion of David Widlan, Ph.D., reassess the residual functional capacity (RFC), and take additional vocational expert testimony as necessary. Tr. 703, 856-68. After the ALJ conducted a second hearing on November 5, 2015, the ALJ issued a decision on March 7, 2016, again finding Ms. Acosta not disabled. Tr. 703-725.

# THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[2] the ALJ found:

**Step one:** Ms. Acosta has not engaged in substantial gainful activity since December 24, 2009, the alleged onset date.

**Step two:** Ms. Acosta has the following severe impairments: degenerative disk disease of the cervical and lumbar spine, ankle fracture, headaches, depression, personality disorder, generalized anxiety disorder, post-traumatic stress disorder, and moderate obesity.

**Step three:** These impairments do not meet or equal the requirements of a listed impairment.[3]

**Residual Functional Capacity:** Ms. Acosta can perform light work as defined in 20 C.F.R 404.1567(b) and 416.967(b) including the following: lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand or walk for approximately six hours and sit for approximately six hours per eight hour workday with normal breaks; occasionally climb ramps or stairs, but never ladders, ropes, or scaffolds; frequently handle and finger; occasionally reach overhead; superficial interaction with co-workers with no requirement for team work or collaborative problem solving; occasional interaction with supervisors,

---

[2] 20 C.F.R. §§ 404.1520, 416.920.
[3] 20 C.F.R. Part 404, Subpart P. Appendix 1.

as she could respond appropriately to supervisors; and incidental interaction with the public.

**Step four:** Ms. Acosta can perform past relevant work and, as such, is not disabled.

**Step five:** With respect to the period prior to Ms. Acosta's turning 55 in 2013, the ALJ makes the alternative finding that there were also jobs that existed in significant numbers in the national economy that Ms. Acosta could perform. As such, she was not disabled during that period on this basis as well.

Tr. 703-725. Ms. Acosta now seeks judicial review of the ALJ's March 7, 2016 decision.[4]

## DISCUSSION

**A.   The ALJ's Duty to Develop the Record and Evaluation of Medical Evidence**

Mr. Acosta argues the ALJ erred in failing to develop the record because no treating or examining source offered a complete functional assessment during the relevant time period. Dkt. 12 at 1. Ms. Acosta argues that absent such a comprehensive assessment from treating or examining sources the ALJ erred in relying on opinions of nonexamining State agency medical consultants. Dkt. 12 at 8-9. Ms. Acosta also points to some of the limitations treating and examining providers did assess as indicating "the ALJ erred in failing to develop the record relating to the limitations that could be expected to flow from [Ms. Acosta's] physical and mental impairments." Dkt. 12 at 7.

The ALJ "has an independent duty to fully and fairly develop the record." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (internal citations and quotations omitted). "The ALJ's duty to supplement a claimant's record is triggered by ambiguous evidence, the ALJ's own finding that the record is inadequate or the ALJ's reliance on an expert's conclusion that the evidence is ambiguous." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (citing *Tonapetyan*, 242 F.3d at 1150). However, the ALJ's duty to develop the record cannot be used

---

[4] The rest of the procedural history is not relevant to the outcome of the case and is thus omitted.

ORDER AFFIRMING THE
COMMISSIONER'S FINAL DECISION - 3

to shift the burden of proving disability to the ALJ. *See Mays v. Massanari*, 276 F.3d 453, 460 (9th Cir. 2001) (noting it is the claimant's "duty to prove she was disabled" and she cannot "shift her own burden" to the ALJ by virtue of the ALJ's duty to develop the record). It is the claimant who is "responsible for providing the evidence used to make the RFC determination" and for ultimately proving she is disabled. *Gray v. Comm'r. of Soc. Sec. Admin.*, 365 Fed.Appx. 60, 63 (9th Cir. 2010); 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); 42 U.S.C. § 423(d)(5) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."); 20 C.F.R. § 404.1512 ("In general, you have to prove to us that you are blind or disabled. You must inform us about or submit all evidence known to you that relates to whether or not you are blind or disabled.").

Here, the mere fact that the record does not contain a comprehensive functional assessment from a treating or examining provider does not, in and of itself, render the record inadequate or trigger the ALJ's duty to develop the record. Neither the ALJ nor the reviewing State agency medical consultants, whose opinions the ALJ relied upon in determining Ms. Acosta's RFC, found the record to be inadequate. As the Commissioner correctly points out, there is no requirement that the record contain a treating or examining opinion that exactly matches all the physical restrictions of the RFC. Dkt. 18 at 2. Rather, "[t]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r Soc. Sec. Admin.*, 806 F.3d 996, 1006 (9th Cir. 2015); Dkt. 18 at 2. Moreover, State agency medical consultants are highly qualified specialists with expertise in Social Security disability evaluation and ALJs frequently rely upon such opinions to translate clinical findings, objective testing and treating and examining medical opinions in the record into concrete functional limitations. 20

ORDER AFFIRMING THE
COMMISSIONER'S FINAL DECISION - 4

C.F.R. § 404.1527(5)(2)(i); *see, e.g., Skeens v. Astrue*, 903 F.Supp.2d 1200 (W.D. Wash. Oct. 9, 2012) (ALJ properly relied on State agency consultant to translate medical opinions in the record into concrete functional limitations for purposes of disability evaluation). It was Ms. Acosta's burden to provide the evidence used to make the RFC determination. *See Gray*, 365 Fed.Appx. at 63. To require the ALJ to further develop the record here would improperly shift Ms. Acosta's burden of proving disability to the ALJ. *See Mayes*, 276 F.3d 453. Thus, the Court finds the lack of a comprehensive functional assessment from a treating or examining provider did not, in and of itself, trigger the ALJ's duty to develop the record or render the ALJ's reliance on the opinions of reviewing State agency consultants unreasonable.

In the Statement of Facts section of her Opening Brief, Ms. Acosta offers a lengthy summary of the medical evidence related to her various impairments including her cervical spine, lumbar spine, elbow, headaches and toe. Dkt. 12 at 2-7. For instance, Ms. Acosta notes that in December 2009, she fractured her foot and underwent surgery and notes that in February 2012, she injured her elbow in a fall and subsequently underwent surgery. Dkt. 12 at 3. Ms. Acosta notes that x-rays of her cervical spine showed findings consistent with a possible remote compression fracture at the C3 level, marked narrowing at the C-4-5 level, narrowing at several other levels and "significant spurring" at C4 and 5 levels and vacuum phenomenon at several levels. *Id.* She notes that a cervical MRI showed loss of disc height at several levels, a disc protrusion, disc bulge, evidence of myelopathy, foraminal stenosis and degenerative changes. *Id.* at 5. Ms. Acosta notes that in May 2014 she underwent cervical fusion surgery. *Id.* Ms. Acosta further notes that x-rays of her lumbar spine in 2012 were largely normal but that MRIs of her lumbar spine in September 2012 and March 2015 revealed some degenerative changes and disc bulging and protrusion at the L3-4 and L4-5 levels. *Id.* at 4, 6. Ms. Acosta also notes that she

reported headaches on an almost daily basis in 2013 and of varying frequency in 2015 and that she fractured her toe in January 2014.[5]

Despite Ms. Acosta's lengthy summary of the medical evidence, much of her recitation of facts is not linked to any specific argument or allegation of error. *See Indep. Towers of Wash. v. Washington,* 350 F.3d 925, 929 (9th Cir. 2003) ("Our circuit has repeatedly admonished that we cannot manufacture arguments for an appellant … Rather, we review only issues which are argued specifically and distinctly …"); *Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012) (the burden is on the party claiming error to demonstrate the error and that the error was harmful). The fact that, the record shows the existence of various impairments does not, in and of itself, establish that Ms. Acosta has limitations related to those impairments greater than those opined by the State agency doctors and incorporated into the RFC by the ALJ. Nor does this recitation of the medical evidence, without more, demonstrate that the record was ambiguous or inadequate for the ALJ to reach a determination on the issue of disability. The Court will only address those arguments which are raised specifically and distinctly in Ms. Acosta's Opening Brief. *See Indep. Towers of Wash.*, 350 F.3d at 929; *Ludwig*, 681 F.3d at 1054. Here, the only evidence Ms. Acosta points to specifically in the Argument section of her brief is the opinions of Michael J. Reyes, M.D., Marilyn Degan, ARNP, Catherine W. Britell, M.D. and Wu Zhuge, M.D. Ms. Acosta argues that these opinions demonstrate "the ALJ erred in failing to develop the record relating to the limitations that could be expected to flow from [Ms. Acosta's] physical and mental impairments." Dkt. 12 at 7.

---

[5] In her Statement of Facts Ms. Acosta also summarizes certain of the findings of Michael J. Reyes, M.D., Marilyn Degan, ARNP, Catherine W. Britell, M.D. and Wu Zhuge, M.D. Dkt. 12 at 2-7. However, those opinions are addressed in more detail below as they are specifically raised in the Argument section of Ms. Acosta's brief.

ORDER AFFIRMING THE
COMMISSIONER'S FINAL DECISION - 6

Ms. Acosta points out that in July 2012, Michael J. Reyes, M.D., advised her not to lift more than 10 pounds as her elbow had not fully healed from surgery in April 2012. Dkt. 12 at 7. Specifically, Dr. Reyes indicated that "[a]t this point, we will continue to monitor her healing status. She will take care of her right elbow and lift nothing heavier than ten pounds." Tr. 677. However, the ALJ properly rejected Dr. Reyes' restriction to lifting no more than 10 pounds in finding Ms. Acosta's elbow impairment to be non-severe at step two of the sequential evaluation process. Tr. 707; 20 C.F.R. §§§§ 404.1520(a)(4)(ii), 404.1509, 416.909, 416.920(a)(4)(ii) (At step two of the sequential evaluation analysis, the ALJ must determine if the claimant has "a severe medically determinable physical or mental impairment" that meets the twelve month durational requirement.). Here, the ALJ found there was insufficient evidence to establish more than mild limitation with respect to Ms. Acosta's elbow on an ongoing basis and gave specific and legitimate reasons for rejecting Dr. Reyes' opinion that she should not lift more than 10 pounds. Tr. 707; *see Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (Where a treating or examining doctor's opinion is not contradicted by another doctor, it may be rejected only for clear and convincing reasons and even where contradicted, a treating or examining physician's opinion may be rejected only for "specific and legitimate reasons supported by substantial evidence in the record for so doing.").

Specifically, the ALJ noted that Dr. Reyes' opinion was given shortly after Ms. Acosta's elbow surgery, appeared to apply only while her elbow finished healing and was not indicative of a permanent limitation.[6] Tr. 677, 707. The ALJ also rejected Dr. Reyes' opinion on the grounds that Ms. Acosta "did not seek ongoing care of her elbow and limitations she attributed to her

---

[6] The ALJ does appear to mistakenly indicate that Dr. Reyes gave this opinion in May of 2012 instead of July 2012. Tr. 707. However, Ms. Acosta does not address this minor discrepancy in her assignments of error and the ALJ's reasons for rejecting the Dr. Reyes' opinion still apply to the opinion as issued in July 2012 in that Dr. Reyes specifically notes that her elbow was continuing to heal from surgery. Tr. 677.

ORDER AFFIRMING THE
COMMISSIONER'S FINAL DECISION - 7

1  injury, such as physical therapy," that her ongoing complaints were inconsistent with her report
2  to Dr. Reyes that she felt 98% better, and that Dr. Reyes did not mention a lifting restriction in
3  his later treatment of her other complaints.  Tr. 707, 1500, 1438.  Temporary limitations are
4  insufficient to meet the durational requirement for a finding of disability and this was a valid
5  reason to reject Dr. Reyes' opinion.  *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155,
6  1165 (9th Cir. 2008) (affirming ALJ's finding that treating physicians' short term excuse from
7  work was not indicative of "claimant's long term functioning.").  Ms. Acosta does not
8  specifically challenge any of the ALJ's reasons for rejecting Dr. Reyes' opinion or in finding her
9  elbow impairment non-severe at step two and, as such, any argument with respect to that issue is
10 waived.  *See Indep. Towers of Wash.*, 350 F.3d at 930 (the court "will not consider any claims
11 that were not actually argued in appellant's opening brief"); *Ludwig*, 681 F.3d at 1054 (the
12 burden is on the party claiming error to demonstrate the error and that the error was harmful).
13 Given that the ALJ properly rejected Dr. Reyes' opinion limiting Ms. Acosta to lifting 10
14 pounds, and the opinion was not ambiguous or inadequate for the ALJ to make a proper
15 determination with respect thereto, the Court does not find the ALJ erred in failing to develop the
16 record.
17      Ms. Acosta also points to the January 25, 2016, opinion of ARNP Degan which states
18 that "[w]ith … [Ms. Acosta's] conditions it would be difficult for her to reach, lift and/or carry
19 more than 10#s – especially up and down stairs, move furniture, kneel and walk and stand for
20 extended periods of time."  Tr. 1687.  Ms. Acosta describes this opinion as indicating that she
21 "would have difficulty lifting more than 10 pounds on a regular basis or standing or walking for
22 extended periods of time."  Dkt. 12 at 7.  Ms. Acosta appears to argue that ARNP Degan's
23 opinion is somehow indicative of greater functional limitations than were included in the RFC,

ORDER AFFIRMING THE
COMMISSIONER'S FINAL DECISION - 8

but because she did not offer a more complete functional assessment, the ALJ had a duty to develop the record.  Dkt. 12 at 8.  This argument is largely speculative and the opinion as written is not ambiguous or inadequate such that it triggered the ALJ's duty to develop the record.  To require the ALJ to further develop the record here would improperly shift Ms. Acosta's burden of proving disability to the ALJ.  *See Mayes*, 276 F.3d 453.

     Ms. Acosta does not argue that the ALJ harmfully erred in failing to address ARNP Degan's opinion.  Nor does she argue that ANP Degan's opinion, as written, is inconsistent with the RFC, which limits her to lifting 10 pounds frequently and 20 pounds occasionally and to standing or walking for 6 hours in an 8 hour day.  Tr. 1687.  Accordingly, these arguments are waived.  *See Indep. Towers of Wash.*, 350 F.3d at 930; *Ludwig*, 681 F.3d at 1054.  Moreover, SSR 96-8p provides that "[t]he ALJ must consider all medical opinion evidence" and "[i]f the RFC assessment *conflicts* with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."  *See* SSR 96-8p, 1996 WL 374184, *7 (Jul. 2, 1996) (emphasis added).[7]  Here, ARNP Degan's opinion indicates that Ms. Acosta would have "difficulty" lifting more than 10 pounds "especially up and down stairs" and standing and walking for "extended periods of time."  Tr. 1687.  However, the RFC is the *most* a claimant can do considering his or her limitations or restrictions, not the least a claimant can do.  *See* SSR 96–8p.  That Ms. Acosta would have difficulty lifting more than 10 pounds or walking for extended periods of time does not mean she is unable to do so.  Furthermore, the qualifying statement that

---

[7] Although "Social Security Rulings do not have the force of law, … [n]evertheless, they constitute Social Security Administration interpretations of the statute it administers and of its own regulations."  *See Quang Van Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989) (*citing Paxton v. Sec. HHS,* 865 F.2d 1352, 1356 (9th Cir. 1988); *Paulson v. Bowen*, 836 F.2d 1249, 1252 n. 2 (9th Cir. 1988)) (internal citation and footnote omitted).  As stated by the Ninth Circuit, "we defer to Social Security Rulings unless they are plainly erroneous or inconsistent with the [Social Security] Act or regulations."  *Id.* (*citing Chevron USA, Inc. v. NRDC, Inc.*, 467 U.S. 837, 842–45, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984); *Paxton*, 865 F.2d at 1356)) (footnote omitted).

ORDER AFFIRMING THE
COMMISSIONER'S FINAL DECISION - 9

Ms. Acosta would have difficulty lifting more than 10 pounds "especially up and down stairs" also indicates that this opinion does not limit Ms. Acosta to lifting 10 pounds maximum at all times and in any circumstance. Tr. 1687. Thus, the RFC restriction to lifting 10 pounds frequently and 20 pounds occasionally and walking and standing 6 hours in an 8 hour day does not appear to directly conflict with ARNP Degan's opinion. Tr. 1687, 710. Accordingly, even if Ms. Acosta had properly raised the argument, the ALJ did not harmfully err in failing to address ARNP Degan's opinion. Nor, as discussed above, does Ms. Acosta establish the ALJ erred in failing to develop the record with respect to ARNP Degan's opinion.

Ms. Acosta also notes that in November 2009, prior to the alleged disability onset date, Catherine W. Britell, M.D., found Ms. Acosta could complete a full workday and workweek with various limitations including: 30 minute standing/walking tolerance; 3-4 hour per 8 hour day standing/walking tolerance; 1-2 hour sitting tolerance; 6-7 hour sitting tolerance per 8 hour day; 25-30 pound occasional lifting and carrying ability; 10 pound frequent lifting and carrying ability and occasional bending, stooping and crawling. Tr. 636. Ms. Acosta contends Dr. Britell also "recommended that [she] undergo a formal physical capacities evaluation to obtain a precise measurement of [her] abilities." Dkt. 12 at 9. Ms. Acosta argues that because Dr. Britell was unable to offer a precise assessment of her physical capacity, further development of the record was necessary. *Id.* However, Ms. Acosta mischaracterizes Dr. Britell's statement to some extent. First, Dr. Britell did not "recommend" that Ms. Acosta undergo a formal physical capacities evaluation but indicated that for a more "precise measurement of physical capacities it is necessary to obtain a formal Performance Based Physical Capacities Evaluation." Tr. 636. Dr. Britell did not make this statement because she found the record to be ambiguous but asserted this in the context of qualifying her own opinion as a "rough estimate" of Ms. Acosta's

ORDER AFFIRMING THE
COMMISSIONER'S FINAL DECISION - 10

abilities and explaining that her assessment was an "arbitrary designation" intended only "to assist the counselor and client in vocational planning." Tr. 636; *Cf. Webb*, 433 F.3d at 687 (ALJ's duty to develop the record triggered by reliance on expert's conclusion that evidence is ambiguous). This evaluation was also performed prior to Ms. Acosta's alleged onset date and, thus, Dr. Britell was not basing her comments on a review of the medical records and examination of Ms. Acosta during the period of alleged disability. Moreover, the ALJ reasonably discounted Dr. Britell's opinion as inconsistent with her own clinical testing, which appeared normal. Tr. 720; *see Lester*, 81 F.3d at 830-31; *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (an ALJ may reject an examining physician's opinion if it is contradicted by clinical evidence). Ms. Acosta does not challenge the ALJ's rejection of this opinion and thereby waived any arguments on that issue. *See Indep. Towers of Wash.*, 350 F.3d at 930; *Ludwig*, 681 F.3d at 1054. Accordingly, this statement by Dr. Britell, without more, did not trigger the ALJ's duty to further develop the record.

     Ms. Acosta also notes that in August 2014, orthopedic surgeon Wu Zhuge, M.D., warned her against "excessive activity" in the months following cervical fusion surgery. Dkt. 12 at 7; Tr. 1513, 1520, 1523. Ms. Acosta appears to argue that Dr. Zhuge's statement indicates he may have intended greater functional limitations than were included in the RFC, but because he did not offer a more complete functional assessment, the ALJ had a duty to develop the record. Dkt. 12 at 8. This argument is largely speculative and this statement as written is not ambiguous or inadequate such that it triggered the ALJ's duty to develop the record. To require the ALJ to further develop the record here would improperly shift Ms. Acosta's burden of proving disability to the ALJ. *See Mayes*, 276 F.3d 453. Moreover, as with ARNP Degan's opinion, Ms. Acosta does not argue that the ALJ harmfully erred in failing to address Dr. Zhuge's opinion in the first

instance. Nor does she argue that the opinion, as written, is inconsistent with the RFC. As such, these arguments are waived. *See Indep. Towers of Wash.*, 350 F.3d at 930; *Ludwig*, 681 F.3d at 1054. Moreover, Dr. Zhuge's recommendation that Ms. Acosta refrain from "excessive activity" does not appear to directly conflict with the RFC. *See* SSR 96-8p, 1996 WL 374184 *7 (Jul. 2, 1996) ("[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."). In fact, it is worth noting that, on one occasion, Dr. Zhuge issued this caution against excessive activity in response to Ms. Acosta's reports of neck pain after moving a refrigerator a few months after surgery. Tr. 1523. The suggestion that Ms. Acosta avoid "excessive activity" such as moving a refrigerator does not appear to indicate a greater restriction than the limitation to light work contained in the RFC. *Id.* Thus, even if Ms. Acosta had properly raised this argument, the ALJ did not harmfully err in failing to address Dr. Zhuge's opinion. Nor, as discussed above, does Ms. Acosta establish the ALJ erred in failing to develop the record with respect to Dr. Zhuge's opinion.

In sum, the Court does not find the ALJ erred in failing to develop the record.

**B.  Ms. Acosta's Testimony**

Ms. Acosta also argues the ALJ erred in evaluating her testimony. The Court disagrees.

"In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, the ALJ engages in a two-step analysis." *Molina,* 674 F.3d at 1112 (citing *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Vasquez*, 572 F.3d at 591. "If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives

'specific, clear and convincing reasons' for the rejection." *Id.* (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir.2007)). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834. Here, the ALJ provided several clear and convincing reasons for discounting Ms. Acosta's testimony.

In evaluating the credibility of a claimant's testimony, the ALJ may consider a range of factors including prior inconsistent statements concerning symptoms, inconsistency with the medical evidence, as well as the claimant's daily activities. *See Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014); *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995). Here, the ALJ pointed out several areas in which Ms. Acosta's testimony or behavior was inconsistent with her own prior statements, the medical record and her own activities. For instance, Ms. Acosta testified at the hearing that she finished dental assistant school in 2012 but that when she went to her externship she realized she "wasn't going to be able to do it" due to her neck issues. Tr. 780. However, the ALJ noted that Ms. Acosta reported elsewhere that she had, in fact, completed the externship and that she had reported to one provider, with three weeks remaining in her externship, that it was going well and that she hoped to be hired permanently upon completion. Tr. 576, 715. The ALJ also noted that Ms. Acosta previously reported to another provider that she had a very positive experience with the dental externship, making no mention that she was unable to continue. Tr. 562, 715. The ALJ further noted that Ms. Acosta reported to another provider that she had completed the externship but had subsequently broken her arm. Tr. 525, 715. The ALJ reasonably found these prior statements inconsistent with Ms. Acosta's testimony that she realized during her externship she would not be able to continue due to her neck issues.

ORDER AFFIRMING THE
COMMISSIONER'S FINAL DECISION - 13

The ALJ also noted that Ms. Acosta made inconsistent statements regarding her substance use and that her lack of candidness on this issue raised credibility concerns. Specifically, the ALJ notes that on at least one occasion Ms. Acosta indicated that she had not used cocaine since 1992 but elsewhere admitted using cocaine in 2003. Tr. 508, 525. This was also a valid reason to discount Ms. Acosta's testimony. *See Verduzco v. Apfel*, 188 F.3d, 1087, 1090 (9th Cir. 1999) (relying on inconsistent statements about alcohol use to reject claimant's testimony); *accord Thomas*, 278 F.3d at 959. The ALJ also discounted Ms. Acosta's testimony based on inconsistent statements regarding the effectiveness of medication for her headaches. Tr. 716. Specifically, the ALJ notes that although at the hearing Ms. Acosta testified the medication prescribed to treat her headaches (including imitrex) was ineffective, earlier that year in April 2015, she told a provider that imitrex was generally helpful and that gabapentin was also helpful although she acknowledged she was "not regular about taking this." Tr. 716, 802. This was also a valid reason to discount Ms. Acosta's testimony. *See Wilson v. Astrue*, 435 Fed. Appx. 636, 639 (9th Cir. 2011) (ALJ properly discounted claimant's credibility where she failed to acknowledge improvement with medication at the hearing when two months earlier she had informed her provider the medication "was working well").

The ALJ also reasonably discounted Ms. Acosta's testimony based on inconsistencies between Ms. Acosta's allegations and the medical record. Tr. 713. Although, once evidence demonstrating a medically determinable impairment has been provided an ALJ may not discredit a claimant's testimony solely as unsupported by objective medical evidence, *Bunnell v. Sullivan*, 947 F.2d 341, 343, 346-47 (9th Cir. 1991), an ALJ may discredit a claimant's testimony when it contradicts evidence in the medical record. *Johnson*, 60 F.3d at 1434. Here, for instance, the ALJ noted that although Ms. Acosta alleged at the hearing that the hardware from her cervical

fusion surgery had come loose, this was inconsistent with the medical record which, in October 2014 specifically noted satisfactory alignment, intact hardware and no signs of loosening. Tr. 713, 1518. The ALJ further notes that although in May 2015 Ms. Acosta's surgeon did indicate that the surrounding tissues were "not well healed" there was no mention of "loosening." Tr. 1561. The ALJ also points out that no remedial action appears to have been taken other than to advising the claimant to quit smoking in order to improve healing. Tr. 713, 1558, 1651. Ms. Acosta's counsel acknowledges in the Opening Brief that the evidence did not, in fact, suggest that Ms. Acosta's fusion hardware had loosened. Dkt. 12 at 11. However, counsel argues that Ms. Acosta may have misinterpreted the doctor's suggestion that her surrounding tissue had not healed well as, instead, indicating that her hardware had loosened. *Id.* Counsel's argument is purely speculative. At best this argument constitutes an alternative interpretation of the evidence but fails to demonstrate that the ALJ's interpretation was unreasonable or unsupported by substantial evidence. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir 2001) (where an ALJ's interpretation of the evidence is reasonable and supported by substantial evidence the Court must uphold the ALJ's determination even if there are reasonable alternative interpretations). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Under the circumstances Court finds the ALJ's interpretation of the evidence to be reasonable and, as such, the Court will not second-guess the ALJ's finding. Thus, this inconsistency constituted another valid reason to discount Ms. Acosta's testimony.

      The ALJ further discounted the credibility of Ms. Acosta's testimony based on evidence of activities that conflicted with her complaints of disabling physical and mental health symptoms. A claimant's reported daily activities may form the basis for an adverse credibility

ORDER AFFIRMING THE
COMMISSIONER'S FINAL DECISION - 15

determination to the extent the activities contradict the claimant's other testimony or if the activities are transferable to the work setting. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007); *see Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) ("While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when those activities "contradict claims of a totally debilitating impairment." (internal quotations and citations omitted)). Here, the ALJ reasonably discounted Ms. Acosta's testimony of disabling physical and mental symptoms based in part on her demonstrated ability to complete the dental assistant training program, including a six-week 36-hour per week externship, during her alleged period of disability. Tr. 53, 718. Specifically, the ALJ noted that Ms. Acosta was able to enroll in a dental assistant training program and complete the program with good grades, "indicating she had the cognitive and social capacity to do so." Tr. 718. The ALJ also noted that Ms. Acosta completed her training and externship which she indicated to be a "very positive experience" and, although she testified later to experiencing some emotional difficulties, at no point did she mention any accommodation, physical or otherwise, provided to her during the externship. Tr. 51, 718. The ALJ reasonably discounted Ms. Acosta's testimony on this basis as well as on the grounds that her willingness to "chose a program resulting in a profession requiring more than sedentary exertion also appears inconsistent with her allegations at the time." Tr. 718. Even if Ms. Acosta's externship did not constitute substantial gainful activity, the ALJ reasonably considered Ms. Acosta's ability to engage in and complete her externship as inconsistent with her allegation of disability after December 24, 2009. *See Molina*, 674 F.3d at 1112; C.F.R. 404.1571 ("Even if the work you

have done [during a period of alleged disability] was not substantial gainful activity, it may show that you are able to do more work than you actually did.").

The ALJ also noted that in late August 2014, several months after Ms. Acosta underwent surgery on her cervical spine, she reported moving a refrigerator while cleaning.  Tr. 715, 1523.  Although Ms. Acosta reported that this had caused some aggravation to her neck, the ALJ reasonably found Ms. Acosta's ability to move a refrigerator while cleaning inconsistent with her allegations of significant physical limitations.  *Id.*  Moreover, at her most recent August 2015 well visit, the ALJ noted that Ms. Acosta reported gardening and walking as her current exercise habits.  Tr. 715, 1660.  The ALJ also reasonably found these activities to be contrary to her portrayal of her physical capacity at the hearing three months later, with no indication of significantly worsening symptoms.[8]  *Id.*; *see, e.g.,* Tr. 786-87 (testimony from Ms. Acosta that she had a disabled parking pass because she has "a hard time walking.").

## CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

DATED this 24th day of March, 2017.

Thomas S. Zilly
United States District Judge

---

[8] The ALJ also gave several other reasons for discounting Ms. Acosta's testimony.  However, the Court need not address these other reasons in detail because, even if erroneous their inclusion is harmless as they do not negate the ALJ's other valid reason for discounting Ms. Acosta's testimony.  *See Carmickle v. Comm'r., Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (including an erroneous reason, among other reasons for discounting a claimant's testimony, is at most harmless error if the other reasons are supported by substantial evidence and the erroneous reason does not negate the validity of the overall determination).